**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Western Watersheds Project, et al., | No. CV-20-00149-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| Anthony Scott Feldhausen, et al., | |
| Defendants. | |

In this suit, Plaintiffs seek review of agency action under the Administrative Procedures Act. Now pending before the Court is Plaintiffs' Motion to Complete the Administrative Record and Compel Production of a Privilege Log. (Docs. 32, 33.) The motion is fully briefed. (Docs. 35, 36.) For the reasons that follow, the Court will grant the motion, in part.

**I.     BACKGROUND**

Plaintiffs filed this action in April 2020. The complaint is framed as a challenge to the Bureau of Land Management's (BLM) administrative decision to allow expanded livestock grazing and vegetation treatments within the San Pedro Riparian National Conservation Area (SPRNCA). (Doc. 12.) Plaintiffs seek to set aside the BLM's Approved Resource Management Plan (RMP) for the SPRNCA, and the associated Record of Decision (ROD) and Final Environmental Impact Statement (FEIS). (Doc. 32 at 10; Doc. 35 at 7.)

On October 28, 2020, the Court adopted the parties' proposed case management

schedule and ordered the Federal Defendants to produce and certify the administrative records of BLM and the Fish and Wildlife Service (FWS). (Doc. 19.) The Court ordered Plaintiffs to file any motion to complete or supplement the administrative records on or before April 28, 2021. (Doc. 25.)

In December 2020 and January 2021, the Federal Defendants filed the indexes of the contents of the relevant BLM and FWS administrative records. (Docs. 21, 23.) The Federal Defendants submitted the administrative records to the Court on portable electronic media (USB flash drive).

On April 28, 2021, Plaintiffs timely filed the pending motion to complete BLM's administrative record and compel production of a privilege log. (Doc. 32.) The Federal Defendants oppose the motion. The Defendants assert that BLM's decision does not, contrary to Plaintiffs' claim, authorize "expanded livestock grazing and vegetation treatments," but only establishes the programmatic option that such uses be considered in future project-level decision-making. (Doc. 35, p. 6.) Defendants argue that, in this context, the administrative record submitted by the Defendants provides all the information that the Court needs, and may legally consider, to resolve Plaintiffs' claims. (*Id.*)

## II.   LEGAL STANDARD

Under the APA, a reviewing court's decision must be based upon the "whole record." 5 U.S.C. § 706. "The whole administrative record, however, 'is not necessarily those documents that the agency has compiled and submitted as "the" administrative record.'" *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citation omitted). Rather, the whole administrative record "consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Id.*

## III.   DISCUSSION

### A.   Plaintiffs have Rebutted the Presumption of Completeness as to BLM's Administrative Record.

Plaintiffs assert that BLM's certification of its administrative record is inadequate,

and therefore request that the Court order BLM to conduct a new search of its files and submit a complete record that complies with the "whole record" standard. The Court will grant Plaintiffs' request.

"The agency is entitled to a strong presumption of regularity in designating the administrative record." *Safari Club Int'l v. Jewell*, CV-16-00094-TUC-JGZ, 2016 WL 7785452, *2 (D. Ariz. July 7, 2016). "The party challenging the completeness of the record bears the burden of overcoming this presumption of regularity by 'clear evidence.'" *Id.* (citation omitted). An agency's certification of the administrative record must "make clear that the record includes all documents and materials directly or indirectly considered by the agency in making its decision." *Oceana, Inc. v. Ross*, CV-19-03809-LHK (SVK), 2020 WL 511899, *2 (N.D. Cal. Jan. 31, 2020) (citing *Gill v. Dep't of Justice*, CV-14-03120-RS (KAW), 2015 WL 9258075, at * 3-6 (N.D. Cal. Dec. 18, 2015)). A plaintiff can "rebut the presumption of completeness 'by showing that the agency applied the wrong standard in compiling the record.'" *Oceana, Inc.*, 2020 WL 511899, at *2 (citation omitted).

Here BLM's certification of the record does not cite the correct standard. BLM does not certify that the record includes all documents and materials directly or indirectly considered by the agency in making its decision. Rather, BLM certifies, "The documents contained in the Administrative Record constitute true, accurate, and complete copies of the original documents located in the BLM's files." (Doc. 21-1, p. 3.) Further, the certification states that "the Index to the Administrative Record . . . identifies each document in the BLM Administrative Record . . . [and] that the documents referenced in the Index constitute a true, correct, and complete copy of the Administrative Record for the subject of this litigation." (*Id*.) The certification fails to "identify any criteria" used by BLM in compiling the record. *See Oceana*, 2020 WL 511899, *3. Such certification is insufficient. *See id.* (finding certification that the record was the "complete copy of the administrative record" to be insufficient); *see also Gill*, 2015 WL 9258075, *6 ("Because Defendants certified an administrative record that, on its face, appears to contain less than all the documents and materials directly or indirectly considered by the agency in making

its decision, Plaintiffs have sufficiently rebutted the presumption of completeness.").

When an agency fails to file a proper certification of its administrative record, the agency must "revisit the administrative record to ensure its completeness." *Gill*, 2015 WL 9258075, \*6. "[M]erely re-drafting" the certification does not constitute compliance. *Id.* Rather, the agency must conduct a new search of its files to ensure it includes all materials and documents directly or indirectly considered by the agency. *Id.* Thus, the Court will order BLM to revisit the administrative record, file a new record, and file a new certification consistent with this Order, setting forth in the certification the parameters of its search and the results.

### B. Motion to Compel Certain Documents

Although its certification does not certify such, BLM asserts in its Response that it produced an administrative record that includes only the evidence it considered, directly or indirectly, in the course of its decision process. Plaintiffs argue that BLM considered the numerous references cited in the Approved Resource Management Plan (RMP), Record of Decision (ROD), Final Environmental Impact Statement (FEIS), and Analysis of Management Situation (AMS), but categorically excluded those documents from the record. Plaintiffs further assert that BLM must have considered, in addition to the references cited, certain field notes, logs, monitoring results, data sheets, reports, and other documents in order to create certain data tables and make the factual findings included in the Draft RMP and EIS. Having reviewed the parties' submissions, the Court concludes that BLM must produce additional documents that it directly or indirectly considered in its decision process.

#### 1. References Listed in Record of Decision, Approved Resource Management Plan, and Final Environmental Impact Statement

Because Plaintiffs are challenging the RMP for the SPRNCA, and the associated ROD and FEIS, any documents or materials BLM considered in the decision process must be included in the administrative record. *See Thompson*, 885 F.2d at 555 (standard for compiling record); *see also Safari Club Int'l*, 2016 WL 7785452, \*2. ("When moving to compel specific documents, a party must identify the documents and reasonable, non-

speculative grounds for its belief that the documents were considered by the decision-makers involved in the determination.").

Plaintiffs point to specific documents BLM directly relied upon in developing the ROD, RMP, and FEIS; these documents and materials are identified as references in the ROD, RMP, and FEIS. (*See* SPRNCA 0005485-0005511; SPRNCA 0005152-0005153.)[1] Because the record supports Plaintiffs' contention that BLM considered the cited documents and materials in its RMP decision process, the Court will order BLM to include the cited documents and materials in the record. *See Sharks Sports & Ent. LLC v. Fed. Transit Admin*., No. 18-CV-04060-LHK (SVK), 2020 WL 511998, at *9 (N.D. Cal. Jan. 31, 2020) (noting that where an agency "specifically cites to a study or report, that is sufficient evidence that the [agency] considered, directly or indirectly, that document in developing the [challenged decision], and the document should be included in the administrative record"). Accordingly, BLM must include in the Administrative Record those documents it cited as references in the ROD and Approved RMP (*See* SPRNCA 0005152-0005153), and the FEIS (*See* SPRNCA 0005485-0005511).

### 2. References Listed in Analysis of Management Situation

BLM need not include in the Administrative Record those documents cited as sources in its AMS. (*See* SPRNCA 0004394-0004418.) BLM created the AMS to inform its development of the RMP, but the AMS is not a decision that is directly challenged in this case. To compel production of a source within the AMS, Plaintiffs must establish by clear evidence that the "report relies so heavily on an underlying source that the cited authority might fairly be said to have been indirectly considered by the decision-maker." *Safari Club Int'l*, 2016 WL 7785452, *2; *see also Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1277 (D. Colo. 2010) (noting that "consideration through citation . . . stretches the chain of indirect [consideration] to its breaking point and cannot be a basis for compelling completion of an Administrative Record"). As explained in *Safari Club Int'l v. Jewell*, No. CV-16-00094-TUC-JGZ, 2016 WL 7785452, at *2 (D. Ariz. July 7,

---

[1] The Court's citations to the administrative record utilize the identifiers used in that record.

2016):
> Documents and materials indirectly considered by agency decision-makers are those that may not have literally passed before the eyes of the decision-makers, but were 'so heavily relied on in the recommendation that the decision maker constructively considered' them." *W. Watersheds Project v. Bureau of Land Mgmt.*, No. 3:11-CV-00053-HDM, 2012 WL 13937, at *1 (D. Nev. Jan. 4, 2012) (quoting *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1275-76 (D. Colo. 2010)); *see Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001). This may occur, for example, where the document was relied upon by subordinates, rather than the final decision-maker, *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1275, or where a report relies so heavily on an underlying source that the cited authority might fairly be said to have been indirectly considered by the decision-maker. *WildEarth Guardians v. Salazar*, No. CV-09-00574-PHX-FJM, 2009 WL 4270039, at *4 (D. Ariz. Nov. 25, 2009).

*Safari Club Int'l*, 2016 WL 7785452, at *2. The AMS may have informed BLM's development of the RMP, but Plaintiffs fails to demonstrate that BLM considered any underlying sources cited in the AMS. Plaintiffs do not assert that any one of the sources cited in the AMS were so heavily relied upon that the relevant decision-maker could fairly be said to have constructively considered the source when making the challenged decisions in this case. Thus, Plaintiffs have failed to meet the burden of proof necessary to compel production of these sources.

### 3. Sources Cited in Factual Data Tables and Conclusions

In the Draft RMP and EIS, Plaintiffs point to data tables and factual conclusions that concern inventories of soil, conditions of surface and ground water, types and quantities of vegetation, acreage available for grazing, the occurrence of unauthorized grazing, and land health, arguing that some underlying documents must exist that support these tables and factual conclusions. (Doc. 32 at 20-22; Doc. 36 at 13.) Plaintiffs seek to compel production of any documents supporting the information contained in the tables and the factual conclusions. Because Plaintiffs fail to identify the specific documents they seek to compel, the Court will deny this general request. *See Safari Club Int'l*, 2016 WL 7785452, *2 (moving party must identify the documents). BLM, however, is advised that when it revisits the record, it must evaluate whether the data tables and factual conclusions

cited by Plaintiffs are supported by materials that BLM considered and therefore should have included in the record. For example, the Court notes that data tables and factual conclusions in the Draft RMP and EIS are supported by sources identified as "BLM" or "BLM GIS." (*See* SPRNCA 0004581-84, SPRNCA 0004586-88, SPRNCA 0004594-60.) BLM must ensure that information considered in creating the tables and reaching factual conclusions is included in the record.

### C. BLM Must Submit a Privilege Log for all Privileged Materials, including Deliberative Ones

Plaintiffs also seek to compel BLM to produce internal materials and internal and external communications, including deliberative ones. In the alternative, Plaintiffs assert that BLM should produce a privilege log for all materials and documents it excludes from the record as deliberative. Defendants argue that deliberative documents, as a matter of law, are not part of the administrative record, and therefore the materials were properly excluded, and no privilege log is required. BLM argues the materials Plaintiffs "seek merely *reflect* consideration of the evidence in the record; they are not themselves *evidence*, and thus are not themselves considered, directly or indirectly." (Doc. 35 at 12 (emphasis in original).)

In *In re United States,* the Ninth Circuit stated that it is has not directly "addressed whether assertedly deliberative documents must be logged and examined or whether the government may exclude them from the administrative record altogether." *In re United States*, 875 F.3d 1200, 1210 (9th Cir. 2017), *vacated on other grounds by In re United States*, 138 S. Ct. 443, 445 (2017). But, noting that "many district courts within this circuit have required a privilege log and *in camera* analysis of assertedly deliberative materials in APA cases," the court held that in the absence of controlling precedent, the "district court's decision to require a privilege log and evaluate claims of privilege on an individual basis before including documents in the record was not clearly erroneous as a matter of law." [2]

---

[2] The Court notes that because a writ of mandamus was at issue in *In re United States*, the Ninth Circuit applied the clear error as a matter of law standard. 875 F.3d 1210; *see also In re Bundy*, 840 F.3d 1034, 1041 (9th Cir. 2016) (stating clear error standard).

*Id.*

Recognizing that deliberative documents are privileged, but the manner in which an agency may exclude privileged documents has not been definitively decided, this Court is persuaded that in camera review of allegedly deliberative documents is appropriate in the circumstances presented in this case. *See California v. U.S. Dep't of Homeland Sec.*, CV-19-04975-PJH, 2020 WL 1557424, *8 (N.D. Cal. April 1, 2020) (applying the deliberative process privilege is consistent with the court's scope of judicial review, which "under the APA is based on an agency's stated reasons and an 'inquiry into mental processes of administrative decisionmakers is usually to be avoided' . . . absent a showing of bad faith or improper behavior.'"). A document should not be excluded simply because the agency asserts it is deliberative. "Allowing agencies discretion to determine which internal communications to include or withhold, without explanation or even bare assertion of privilege 'would invite all manner of mischief.'" *S.F. Bay Conservation and Dev. Comm'n v. U.S. Army Corps of Eng'rs*, CV-16-05420-RS (JCS), 2018 WL 3846002, *7 (N.D. Cal. Aug. 13, 2018) (citation omitted). Accordingly, the Court will order BLM to produce a privilege log stating particularized reasons why materials or documents were withheld, in whole or in part, under any claim of privilege, including the deliberative process privilege.

To assist BLM in determining whether a document should be included in the record, the Court directs BLM's attention to the Ninth Circuit's holdings in *National Wildlife Federation v. United States Forest Service*, 861 F.2d 1114, 1119 (9th Cir. 1988), and *Assembly of California v. United States Department of Commerce*, 968 F.2d 916, 921 (9th Cir. 1992). As explained in these cases, a document is protected by the deliberative process privilege if it "'reflect[s] the personal opinions of the writer rather than the policy of the agency' or . . . 'inaccurately reflect[s] or prematurely disclose[s] the views of the agency.'" *Nat'l Wildlife Fed'n*, 861 F.2d at 1118-19 (internal citation omitted). The deliberative process privilege does "not turn on whether we label the contents of a document 'factual' as opposed to 'deliberative,'" or vice versa. *Nat'l Wildlife Fed'n*, 861 F.2d at 1119. Disclosure of factual information may be protected by the privilege if "the unveiling of

factual materials would be tantamount to 'publication of the evaluation and analysis of the multitudinous facts' conducted by the agency." *Id.* "The key to the inquiry is whether revealing the information exposes the deliberative process." *Assembly of Cal.*, 968 F.2d at 921. The factual/deliberative distinction survives "as a useful rule-of-thumb favoring disclosure of factual documents, or factual portions of deliberative documents where such a separation is feasible." *Assembly of Cal.*, 968 F.2d at 921. BLM must apply these principles in determining whether to disclose, in whole or in part, any document or material indirectly or directly considered by BLM.

**IV.   Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion to Complete the Record and Compel Production of a Privilege Log (Doc. 32) is **GRANTED IN PART AND DENIED IN PART**, as set forth in this Order.

**IT IS FURTHER ORDERED** that BLM must conduct a new search of its files to identify all materials and documents which were indirectly or directly considered in its decision making. Upon completion of its search, BLM must submit a new administrative record which includes all materials and documents considered and must file a certification that complies with the standard set forth in this Order. The certification must set forth the parameters and results of BLM's record review.

**IT IS FURTHER ORDERED** that BLM must specifically include in the newly submitted administrative record the documents and materials ordered to be disclosed in Section III.B. of this Order.

**IT IS FURTHER ORDERED** that BLM must produce a privilege log listing documents withheld and stating particularized reasons for withholding the document, in whole or in part.

**IT IS FURTHER ORDERED** that Defendants shall submit the new BLM administrative record, the accompanying certification, and the privilege log within **30 days** of the date of this Order.

**IT IS FURTHER ORDERED** that Plaintiffs shall identify any issues concerning the newly submitted administrative record, and initiate conferral within **45 days** of the date of this Order, and the parties must informally seek to resolve any issues and disputes regarding the record among themselves. If informal resolution efforts are not successful, Plaintiffs shall file any motion to complete the administrative record within **60 days** of the date of this Order.

**IT IS FURTHER ORDERED** the parties shall file a new briefing schedule within **60 days** of the date of this Order **or** if a motion to complete is filed, within **14 days** of the Court's resolution of the motion.

Dated this 6th day of December, 2021.

_____
Honorable Jennifer G. Zipps
United States District Judge